UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| **CENTER FOR BIOLOGICAL DIVERSITY**<br>P.O. Box 710<br>Tucson, AZ 85702-0710<br><br>*Plaintiff,*<br><br>v.<br><br>**DOUG BURGUM**, in his official capacity as Secretary of the U.S. Department of the Interior<br>1849 C Street NW<br>Washington, DC 20240<br><br>**U.S. FISH AND WILDLIFE SERVICE**<br>1849 C Street NW<br>Washington, DC 20240<br><br>**BRIAN NESVIK**, in his official capacity as Director of the U.S. Fish and Wildlife Service<br>1849 C Street NW<br>Washington, DC 20240<br><br>*Defendants.* | Case No.<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

## INTRODUCTION

1. Repeatedly over the last two decades, the U.S. Fish and Wildlife Service has tried to reduce or remove federal protections for gray wolves (*Canis lupus*), with courts nearly universally rejecting these attempts. The agency's unlawful efforts have relied upon outdated and piecemeal recovery plans that do not address the presently listed gray wolf entity. This lawsuit seeks to compel recovery planning necessary to guide wolf conservation across the country, including in the West Coast, Great Plains, Southern Rocky Mountains, and the Northeast, where federally protected gray wolves live and

1

could recover with further conservation efforts.

2. The Endangered Species Act ("ESA") provides that the Secretary of the Interior "shall develop and implement" recovery plans for listed species. 16 U.S.C. § 1533(f). The only exception to this mandate is if "such a plan will not promote the conservation of the species." *Id*.

3. In a prior case challenging inadequate recovery planning for the gray wolf, this Court held that the U.S. Fish and Wildlife Service "must create a recovery plan *for the species it has listed*." *Ctr. for Biological Diversity v. Haaland*, No. 22-cv-3588 (DLF), 2023 WL 5161741, at *6 (D.D.C. Aug. 11, 2023) (emphasis original). The Court ruled that the agency cannot rely on subspecies recovery plans that "straightforwardly do not satisfy" the requirements of the ESA. *Id*. at *10. After this ruling, the U.S. Fish and Wildlife Service announced that it would draft a national gray wolf recovery plan by the end of last year.

4. But instead of preparing the recovery plan, the agency issued a finding that gray wolf conservation would not benefit from a recovery plan because listing in Minnesota and the rest of the Lower 48 states is "no longer appropriate." Yet gray wolves remain listed nearly nationwide, and the agency has no pending proposal to strip them of such protection.

5. To ensure that the U.S Fish and Wildlife Service recovers wolves across the country, as the law requires, the Center for Biological Diversity ("the Center") brings this lawsuit under the ESA and the Administrative Procedure Act, 5 U.S.C. § 500 *et seq.* ("APA"), against defendants Doug Burgum, Secretary of the Interior; the U.S. Fish and Wildlife Service; and its Director, Brian Nesvik (collectively, "FWS"). As detailed

further below, the Court should order FWS to develop a national recovery plan for the gray wolf.

## JURISDICTION AND VENUE

6. This action arises under the ESA, 16 U.S.C. § 1531 *et seq.*, and the APA, 5 U.S.C. §§ 551, 701 *et seq*. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. §§ 2201-2202 (declaratory and further relief), 16 U.S.C. §§ 1540(c) and (g)(1)(C) (action arising under the ESA and citizen suit provision), and 5 U.S.C. § 702 (Administrative Procedure Act).

7. The Center has properly given notice to FWS of its claims, in accordance with 16 U.S.C. § 1540(g)(2)(C). Specifically, the Center sent the Secretary and the Director of the U.S. Fish and Wildlife Service a 60-day notice of intent to sue for violations of the ESA on December 2, 2025.

8. Venue is proper in the District of Columbia pursuant to 16 U.S.C. § 1540(g)(3)(A) and 28 U.S.C. § 1391(e), as this civil action is brought against an agency of the United States, as well as officers and employees of the United States acting in their official capacities and under the color of legal authority. Defendants reside in the District of Columbia, and a substantial part of the events giving rise to the claim – namely, decision making regarding FWS's unlawful finding that gray wolf conservation would not benefit from a recovery plan – occurred in the District of Columbia, and no real property is involved in this action.

## PARTIES

9. Plaintiff CENTER FOR BIOLOGICAL DIVERSITY is a nonprofit 501(c)(3) corporation with offices across the country, including in Tucson, Arizona;

Oakland, California; Portland, Oregon; and Washington, D.C. The Center works through science, law, and creative media to secure a future for all species, great or small, hovering on the brink of extinction. The Center has more than 100,000 members throughout the United States and the world. It also has more than 1.8 million members and online activists dedicated to the protection of endangered species and wild places.

10. The Center and its members have a longstanding interest in conserving gray wolves and have routinely advocated for their conservation. For example, the Center submitted a petition for rulemaking to FWS on July 20, 2010, that formally requested development of a national wolf recovery plan under the ESA, 16 U.S.C. § 1533(f), and the APA, 5 U.S.C. § 553. The Center has filed numerous cases to protect gray wolves, including successful cases to reverse FWS's efforts to remove federal protections from the species prematurely. *See, e.g.*, *Defs. of Wildlife v. U.S. Fish & Wildlife Serv.*, 584 F. Supp. 3d 812 (N.D. Cal. 2022).

11. The Center brings this action on behalf of its members who live, work, recreate, study, and otherwise use and enjoy areas throughout the gray wolf's current and historical range. These members have observed wolves in the wild throughout their current range and would like to continue seeing them in this current range and throughout more of their historical range, including the Northeast, Pacific Northwest and California, Southern Rocky Mountains, and the Great Plains. The Center's members derive scientific, aesthetic, recreational, and other benefits from observing, studying, and otherwise enjoying this species in the wild. The Center and its members derive professional and scientific benefits from studying gray wolves, advocating for their conservation, and communicating scientific information about them to the public. Thus,

the Center and its members have ongoing interests in the wolf and its recovery.

12. The interests of the Center and its members in observing, studying, and otherwise enjoying the wolf are directly harmed by FWS's unlawful refusal to develop and implement a national recovery plan for gray wolves. Specifically, FWS's recent decision that recovery planning would not benefit wolf conservation diminishes the members' scientific, aesthetic, and recreational interests because the gray wolf is unlikely to recover fully without a national recovery plan. Thus, FWS's unlawful behavior decreases opportunities to view, study, enjoy, and communicate about wolves, harming the Center and its members' scientific, aesthetic, professional, and recreational interests.

13. Unless the requested relief is granted, the interests of the Center and its members will continue to be injured by FWS's failure to develop and implement a national recovery plan for the gray wolf under the ESA. The injuries described above are actual, concrete injuries that are caused by FWS and presently suffered by the Center and its members, and they will continue to occur unless relief is granted by this Court. The relief sought herein, which includes an order that FWS develop and implement a national gray wolf recovery plan, would at least partially redress the Center's and its members' injuries. The Center has no other adequate remedy at law.

14. The Center has individual members, including Noah Greenwald, Josh Able, Bryan Newman, Tom Zieber, Brett Hartl, Tim Coleman, and John Glowa, who regularly visit, study, work, photograph, live, or recreate on lands that are suitable gray wolf habitat. Each of the members has specific plans to continue to observe, study, or otherwise interact with gray wolves and their habitat frequently and on an ongoing basis. These members derive recreational, spiritual, professional, scientific, educational, and

aesthetic benefits from their interactions with gray wolves and their habitat. The harms to these interests will be partially remedied by the creation of a national recovery plan for the gray wolf.

15. Center member Noah Greenwald has seen wolves in the wild and makes frequent visits to areas in the U.S. where wolves live, including Mt. Hood National Forest in his home state of Oregon, with hopes of again viewing wolves. Mr. Greenwald regularly goes on trips with the intention of seeing wildlife like wolves, and he plans to continue to do so in the near future. For example, he has gone backpacking in the central Oregon Cascades, and he recently took a 210-mile bike trip from the Centennial Mountains, Montana to Island Park, Idaho. On these trips Mr. Greenwald has hoped to experience seeing gray wolves in the wild as he has in the past.

16. Center member and California resident Josh Able has worked as a professional wildlife photographer who has photographed and seen wolves in the region where he lives. As such, Mr. Able has derived professional and economic value from photographing wolves. Mr. Able hopes to continue to view wolves in his home state of California, and plans to create opportunities in the future to observe wolves, photograph them, and enjoy their presence. The lack of a national recovery plan for the gray wolf negatively impacts Mr. Able's ability to enjoy and photograph wolves in California and other locations in the United States.

17. Tim Coleman is a Center member who lives in northeastern Washington, where most of the state's wolf packs live. He regularly recreates outside in search of wolves and plans to continue looking and listening for wolves and otherwise enjoying their presence in the state. Mr. Coleman is also the Director of Kettle Range Conservation

Group, which does extensive work to protect and preserve the gray wolf and its habitat in the Kettle River Range Mountains of northeastern Washington. Having devoted considerable recreational time to looking for wolves and having actively worked on wolf conservation since 1988, the lack of a national recovery plan harms his interests in wolf recovery in the state of Washington.

18. Bryan Newman is an amateur naturalist and Center member living in Minnesota. He has for many years camped and hiked in wolf habitat in Minnesota and will continue to do so on a regular basis while looking and listening for wolves. He has seen wolves on multiple occasions in Minnesota and has an interest in wolf recovery both in Minnesota and in other areas that he recreates, such as the Great Plains and Southern Rocky Mountains, where he has looked for wildlife like wolves and will continue to do so.

19. Center member Brett Hartl has lived, worked, and taken numerous trips to the Northern Rocky Mountains and elsewhere in wolf habitat over the last twenty years to view and photograph gray wolves in the wild. On his most recent visit to Yellowstone National Park in May 2024, he was able to observe and photograph several wolf packs in Yellowstone's Lamar Valley. Mr. Hartl plans to return to the Northern Rocky Mountains in the early spring of 2027, and hopes to view and photograph wolves again. FWS's failure to develop and implement a national recovery plan impairs the ability of wolves to survive and recover in these areas and thereby impairs Mr. Hartl's ability to observe, photograph, and otherwise enjoy wolves in the wild.

20. Tom Zieber is a Center member and resident of Colorado who has worked on wolf conservation for several decades. Mr. Zieber worked on the successful push to

pass Proposition 114 to reintroduce wolves in Colorado. Mr. Zieber is also an avid camper and hiker. He visits wildlands throughout the western United States and often sees landscapes within the wolf's historical range that are still blessed with ample habitat and prey base, yet devoid of wolves. The absence of wolves greatly diminishes his enjoyment of being in nature, while the presence of wolves deepens his appreciation of wild places and enlivens his experience of the land. Mr. Zieber's interest and appreciation for wolves is injured by FWS's failure to create a national recovery plan to adequately provide for the conservation of the species, including in Colorado.

21. John Glowa is a Center member and the founder of the Maine Wolf Coalition, which was established in 1994 to promote wolf conservation in the Northeast. Mr. Glowa has given presentations throughout the state of Maine to educate people on the importance of wolves and teach about wolf recovery in the Northeast. Mr. Glowa has also spent many hours looking for wolf scat in Maine's woods and sending samples to universities for analysis, with the goal of documenting the presence of wolves in the region. He plans to continue these activities in the future. Mr. Glowa values wolves for their important ecological roles, such as benefiting moose and deer populations by removing sick, old, and otherwise unfit animals from the herds.

22. Defendant DOUG BURGUM, Secretary of the Interior, is the highest-ranking official within the U.S. Department of the Interior and, in that capacity, bears the ultimate responsibility for the administration and implementation of the ESA for terrestrial and freshwater plant and animal species and certain marine species, and for compliance with all other federal laws applicable to the Department of the Interior. He is sued in his official capacity.

23.     Defendant U.S. FISH AND WILDLIFE SERVICE is a federal agency within the Department of the Interior, authorized and required by law to protect and manage natural resources. FWS has primary authority for day-to-day administration of the ESA with respect to terrestrial and freshwater plant and animal species and certain marine species.

24.     Defendant BRIAN NESVIK is Director of the U.S. Fish and Wildlife Service. He is sued in his official capacity.

## FACTUAL ALLEGATIONS

25.     The gray wolf once occupied the majority of North America, excluding perhaps only the driest deserts and the southeastern U.S., where the red wolf occurred. Scientists estimate that prior to European settlement, as many as 2 million wolves may have lived in North America.

26.     Wolves are vitally important to the ecosystems they inhabit. Within the United States, studies of gray wolves in Yellowstone National Park and elsewhere demonstrate that wolves significantly shape their ecosystems, promoting biodiversity and overall ecological health.

27.     Failing to recognize the value of wolves, government agents used deadly poisons and traps to kill wolves during the late 19th century and the first half of the 20th century. By 1967, when wolves were first federally protected under a precursor to the ESA, they had been reduced to fewer than 1,000 wolves in northeastern Minnesota, with a very small, isolated population on Isle Royale in Michigan.

28.     FWS originally protected wolves as four subspecies, but given uncertain validity of these subspecific designations, in 1978 the agency protected the gray wolf in

9

the conterminous United States as an endangered species and designated the Minnesota population as threatened. 43 Fed. Reg. 9607 (March 9, 1978).

29. Rather than develop a national gray wolf recovery plan, FWS developed separate plans for three recovery areas: 1) the Northern Rocky Mountains (drafted in 1978, revised in 1987, now delisted); 2) the eastern U.S. with a focus on Minnesota (drafted in 1978, revised in 1992); and 3) the Southwest (now separately listed as the Mexican gray wolf subspecies).

30. FWS developed these recovery plans prior to major scientific gains in wolf genetics and analysis of population viability. For example, the recovery plan for the "eastern timber wolf" set a goal of 1,250-1,400 wolves for the Minnesota population, with a geographically disjunct population of at least 200 wolves. These goals were met by 1998. Since then, scientists have concluded that wolf populations may require 10,000 individuals to avoid long-term risk of extinction.

31. Recovery efforts, such as wolf reintroduction to the Northern Rocky Mountains, have been largely restricted to regions covered by the recovery plans. The agency never developed recovery plans to guide recovery for many areas where wolves could and should recover, including the Northeast, Pacific Northwest and California, Southern Rocky Mountains, and Great Plains.

32. FWS has made numerous premature efforts to reduce federal protections for wolves under the ESA. The only successful effort was in the Northern Rocky Mountains, where Congress (through a rider to an appropriations bill) directed FWS to remove wolf protections. 76 Fed. Reg. 25590 (May 5, 2011). FWS thereafter removed protections from Wyoming's wolves. 77 Fed. Reg. 55530 (Sept. 10, 2012).

33. On November 3, 2020, FWS issued a final rule "removing the gray wolf entities in the lower 48" from the list of endangered and threatened wildlife. 85 Fed. Reg. 69778 (Nov. 3, 2020). On February 10, 2022, a federal court vacated that final delisting rule. *Defs. of Wildlife v. U.S. Fish & Wildlife Serv.*, 584 F. Supp. 3d 812 (N.D. Cal. 2022). As a result, gray wolves throughout the Lower 48, except for delisted wolves in the Northern Rocky Mountain region and threatened wolves in Minnesota, are currently listed as an endangered species. FWS appealed, and that case remains pending before the Ninth Circuit.

34. The Center filed a lawsuit in 2022 challenging FWS's ongoing failure to develop a national gray wolf recovery plan. *Ctr. for Biological Diversity v. Haaland*, No. 22-cv-3588 (DLF), 2023 WL 5161741 (D.D.C. Aug. 11, 2023). The Court denied FWS's motion to dismiss the case because "the complaint plausibly allege[d] a violation of a nondiscretionary duty to create a single recovery plan for the 44-State Listing gray wolf species." *Id.* at *6. The Court ruled that FWS "must create a recovery plan *for the species it has listed*" and cannot rely on subspecies recovery plans that "straightforwardly do not satisfy" the ESA. *Id.* at *4, 6.

35. After the Court denied FWS's motion to dismiss, the parties entered into a settlement agreement, which the Court approved on December 14, 2023. The settlement required FWS, within two years, to "develop and post on its website a draft recovery plan for listed gray wolves, unless the Service finds that such a plan will not promote the conservation of the species." The Court dismissed the case based on the settlement.

36. On February 2, 2024, FWS announced "a path to support a long term and durable approach to the conservation of gray wolves, to include a process to develop – for

11

the first time – a National Recovery Plan under the Endangered Species Act (ESA) for gray wolves in the Lower 48 states."

37. In November 2025, FWS reversed course and abandoned its intention to prepare a national recovery plan for gray wolves. Instead, FWS published a finding that "recovery plans would not promote the conservation of the gray wolf 44-State or Minnesota listed entities because listing these entities is no longer appropriate under 4(a)(1) of the Endangered Species Act (Act) and measures provided pursuant to the Act are no longer necessary." FWS provided no further justification for its refusal to prepare a national recovery plan, as it had committed to do just one year earlier.

38. Today, gray wolves occupy less than 15 percent of their historical range in the United States, with most recovery progress in areas covered by region-specific recovery plans. The total population numbers less than 8,000 individuals. While this represents an improvement in the status of the gray wolf since its listing, grave threats remain in both occupied and unoccupied portions of its range, including areas that have never been the focus of any recovery efforts.

39. Because recovery efforts have focused on just three regions and not on the nationwide listed entity – i.e., the gray wolf 44-State and Minnesota listed entities – full recovery of the wolf, including in areas where the wolf could again thrive, has not been accomplished, and will not be accomplished in the absence of a comprehensive recovery plan to guide its conservation.

**CLAIMS FOR RELIEF**

40. The Center incorporates by reference each allegation set forth in this Complaint as if set out in full below.

**FIRST CLAIM FOR RELIEF**

**Violation of ESA Section 4(f)'s Mandatory Recovery Planning Duty**

41. Section 4(f) of the ESA provides that FWS "shall develop and implement" recovery plans for the "conservation and survival" of listed species unless "such a plan will not promote the conservation of the species." 16 U.S.C. § 1533(f)(1).

42. The gray wolf's listing broadly covers the Lower 48 except for delisted wolves in the Northern Rocky Mountain region and separately listed Mexican gray wolves and red wolves. The only recovery plan relevant to the currently listed entity covers only the "eastern timber wolf" and focuses primarily on Minnesota.

43. FWS has never developed or implemented a recovery plan for the gray wolf that parallels the wolf's listing status, even though this Court ruled that FWS "must create a recovery plan *for the species it has listed*" and cannot rely on subspecies recovery plans that "straightforwardly do not satisfy" the ESA. *Ctr. for Biological Diversity*, 2023 WL 5161741, *4, *6.

44. Rather than develop and implement a recovery plan, as Section 4(f) requires, FWS published a finding that a recovery plan would not promote the conservation of the 44-State or Minnesota gray wolf entities. FWS instead asserted that "listing these entities is no longer appropriate." But the gray wolf remains listed nearly nationwide, after a federal court vacated FWS's previous rulemaking to delist the 44-State and Minnesota gray wolf entities. The agency has no pending proposals to remove gray wolf protections.

45. Therefore, FWS has violated its mandatory, nondiscretionary duty found in Section 4(f) of the ESA, 16 U.S.C. § 1533(f), to develop and implement a national

recovery plan for the gray wolf. This failure is actionable under the ESA citizen suit provision, 16 U.S.C. § 1540(g)(1)(C).

## SECOND CLAIM FOR RELIEF

### APA Violation

46. FWS announced in February 2024 its decision to prepare a draft gray wolf recovery plan by December 2025. The agency explained that the recovery plan would "support a long term and durable approach to the conservation of gray wolves."

47. Thereafter, FWS reversed course and issued its November 2025 finding that a recovery plan would not benefit wolf conservation.

48. The only reason provided by the agency was that listing in Minnesota and the rest of the Lower 48 states is "no longer appropriate." However, a federal court in 2022 vacated FWS's 2020 rulemaking to delist the 44-State and Minnesota gray wolf entities, and thus the gray wolf remains listed nearly nationwide. The agency has no pending proposals to remove gray wolf protections.

49. FWS provided no explanation, let alone a reasoned one, for its reversal of position on the value of a national recovery plan for conservation of gray wolves. Such an unexplained change in position is the hallmark of arbitrary and capricious decision making. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42 (1983) (explaining that the APA prohibits "changes in current policy that are not justified by the rulemaking record"); *Lone Mt. Processing v. Sec'y of Labor*, 709 F.3d 1161, 1164 (D.C. Cir. 2013) ("As we have long held, an agency changing its course must supply a reasoned analysis indicating that prior policies and standards are being deliberately changed, not casually ignored.").

50. FWS's determination that recovery planning would not benefit wolf conservation is a final agency action that is reviewable under the APA, 5 U.S.C. § 702. This determination is arbitrary and capricious, in violation of the APA, 5 U.S.C. § 706(2).

## PRAYER FOR RELIEF

WHEREFORE, the Center respectfully requests this Court:

1. Declare that FWS unlawfully determined that gray wolf conservation would not benefit from a national recovery plan, and therefore FWS violated its mandatory, nondiscretionary duty found in Section 4(f) of the ESA to develop and implement a recovery plan for the gray wolf, in violation of the ESA, 16 U.S.C. § 1533(f);

2. Declare that FWS failed to provide a reasoned explanation in support of its determination that gray wolf conservation would not benefit from recovery planning, in violation of the APA, 5 U.S.C. § 706(2);

3. Order that FWS develop a national recovery plan for the gray wolf according to a schedule prescribed by the Court;

4. Award the Center its attorneys' fees and costs in this action; and

5. Grant the Center such other and further relief as this Court may deem just and proper.

DATED: February 10, 2026             Respectfully submitted,

*/s/ Eric Robert Glitzenstein*
Eric Robert Glitzenstein (D.C. Bar No. 358287)
CENTER FOR BIOLOGICAL DIVERSITY
1411 K Street NW, Suite 1300
Washington, DC 20005
Telephone: (202) 849-8401
eglitzenstein@biologicaldiversity.org

>Collette L. Adkins (MN Bar No. 035059X)*
>CENTER FOR BIOLOGICAL DIVERSITY
>P.O. Box 595
>Circle Pines, MN 55014-0595
>Telephone: (651) 955-3821
>cadkins@biologicaldiversity.org
>
>*Seeking admission *pro hac vice*
>
>*Attorneys for Plaintiff*